# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-CR-0100-CVE |
| | ) | |
| SAMMY JOE PERRYMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court are Defendant's Motion for Judgment of Acquittal Pursuant to Federal Rules of Criminal Procedure 29 (Dkt. # 129) and Defendant's Motion for New Trial Pursuant to Federal Rules of Criminal Procedure 33 (Dkt. # 130). Defendant Sammy Joe Perryman moves for a judgment of acquittal as to counts one through seven of the indictment on the ground that there was insufficient evidence to sustain the convictions. In addition, defendant has filed a motion for a new trial based on alleged prosecutorial misconduct and the admission of allegedly improper evidence. The arguments made in defendant's motions are identical, aside from the fact that they seek relief pursuant to different procedural rules.

### I.

On July 13, 2011, defendant was charged by indictment with the following offenses: use of fire and explosive to commit a felony in violation of 18 U.S.C. § 844(h)(1) (count one); arson in violation of 18 U.S.C. § 844(i) (count two); and five counts of mail fraud in violation of 18 U.S.C.

§ 134 (counts three through seven).[1] The indictment alleges that defendant committed arson by burning down a health club that he owned and then committed mail fraud while attempting to recover property insurance proceeds for the fire.

Defendant made his initial appearance on July 28, 2011, and pled not guilty to all charges. Dkt. # 4. The Court declared the case complex on August 9, 2011. Dkt. # 13. Due to the complexity of the case, the number of charges, and the voluminous discovery, the trial was continued numerous times and was ultimately set for May 21, 2012. Both parties filed multiple motions in limine, which were each preliminarily ruled on prior to trial. Dkt. ## 76, 89, 94, 103, 115.The trial began on May 21, 2012, and lasted a total of four days. The government called 18 witnesses; defendant called six witnesses. In addition, six joint stipulations were read by the Court to the jury.[2]

It was undisputed at trial that, on the night of January 22, 2006, the health club owned by defendant was destroyed by fire. The parties stipulated that the fire was caused by arson. Dkt. # 127-2 at 11. It was undisputed that defendant filed for Chapter 7 bankruptcy protection approximately eight months before the fire, and that there were three mortgages on the property at the time of the fire.[3] In addition, it was undisputed that on the evening of January 22, 2006, the

---

[1] The indictment also charged defendant with one count of bankruptcy fraud in violation of 18 U.S.C. § 152(1) (count eight) and three counts of money laundering in violation of 18 U.S.C. § 1957(a) (counts nine through eleven). Defendant pled guilty to counts eight and ten, and counts nine and eleven are to be dismissed at sentencing. Dkt. # 70.

[2] This opinion will not attempt to summarize all of the evidence admitted at trial. An unofficial draft of the trial transcript has been reviewed, and this opinion will summarize only the evidence relevant to the pending motions.

[3] The government presented a plethora of evidence, which need not be summarized here, regarding the mortgages on the property, including the specific balances owed and the dates on which payments were due.

defendant and his then wife, Shannon Olmos (formerly Perryman), visited the health club. The government contended that, during this visit, defendant poured the gasoline that was the accelerant for the fire, while defense counsel argued that defendant was not in the building long enough to pour the gasoline and was only in the building to set bug bombs.

The government's first witness was Betty Sparks, a former employee of defendant who had worked at the health club prior to its destruction. Sparks testified that, in 2005 and up until the time of the fire, the health club was generally in disrepair and that its membership numbers were dwindling. Defendant had repeatedly told employees that the health club needed money and that they needed to increase membership. Sparks testified that the urgency with which defendant spoke about the club's financial situation increased during 2005 and into 2006. Sparks testified that, approximately two or three weeks before the fire, defendant removed certain personal items from his office and from his wife's office in the health club. Specifically, Sparks said that two paintings, a file box, and defendant's Boy Scout medals were removed from the health club. Sparks testified that, a day or two before the fire, defendant informed her that he would be setting bug bombs in the health club. Sparks learned of the fire when defendant telephoned her early in the morning of January 23, 2006. Sparks testified that defendant told her that the health club was on fire and that defendant accused another former employee of setting the fire. Sparks further testified that defendant did not sound upset during this conversation. Finally, Sparks testified that, while she was defendant's employee, defendant lost his temper routinely, insulted her, and was mean to his employees.

The government's next witness was Paul Radmilovich, another former employee of defendant. Radmilovich testified that the health club was approximately 40,000 square feet and that

3

gasoline was stored in a shed behind the health club. Radmilovich also testified that, approximately two weeks before the fire, he assisted defendant in removing certain items from the health club and noticed that other items had been removed. Specifically, Radmilovich stated that defendant removed between 12 and 15 floor mats from the weight room, a set of free weights, a painting, defendant's Boy Scout metals, and a computer or printer. Radmilovich also testified that defendant told him that he would be setting off bug bombs on the day of the fire. As to his relationship with defendant, Radmilovich testified that defendant was difficult to work for, would yell at employees, and that he did not have a lot of respect for defendant. Radmilovich also stated that, in early 2003, defendant asked Radmilovich to loan him money and, when Radmilovich refused, defendant lowered Radmilovich's pay.

Olmos testified on behalf of the government and stated that she worked at the health club during her marriage to defendant and at the time of the fire. Olmos oversaw the payment of club dues by members. She stated that business at the health club was on a steady decline from 2004 through 2006 and that the facilities were in disrepair. Olmos testified that she and defendant removed certain paintings from the club after the artist's death in late 2005 because defendant did not want anything to happen to the paintings. Olmos also stated that approximately a week before the fire, defendant removed floor mats from the health club and placed them in their barn in order to prevent their horses from slipping on the concrete.

Olmos testified that, on the day of the fire, she accompanied defendant to the health club so that he could set off bug bombs. The government presented Olmos with a record of a toll booth charge occurring at 5:32 p.m. on January 22, 2006, and Olmos confirmed that was the time at which

she and defendant paid a toll on their way to the health club. Olmos stated that, from the toll booth, it was an approximately fifteen minute drive to the health club.

Once they arrived at the health club, defendant and Olmos parked their truck in front of the main door, unlocked the doors, turned off the alarm, and went inside. Olmos went to her office and reviewed some paperwork that had been left on her desk. She then walked through the women's locker room to the women's whirlpool and sauna area. She checked the chlorine level of the pool and returned to her office by walking through the men's locker room. She stated that she could not see defendant during most of this time but that, at one point, she heard him enter his shop downstairs. Olmos testified that, after she had been back in her office for approximately five minutes, defendant told her to wait in the truck so that he could finish setting off the bug bombs. Olmos stated that she waited in the truck approximately five or 10 minutes. On cross-examination, Olmos admitted that, in her statements to ATF and the insurance company, she had not mentioned that defendant told her to wait in the truck. Olmos stated that, when defendant met her in the truck, he did not smell like gasoline. She further stated that she never saw him with a gasoline can and that his demeanor throughout the day was normal.

When they left the health club, defendant and Olmos stopped at a gas station a quarter mile away to refill the gas tank in their truck. Defendant's counsel presented Olmos with a copy of a gas station receipt for January 22, 2006 time-stamped at 6:14 p.m. Olmos confirmed that this was the receipt for the gas pumped after the couple left the health club. Olmos confirmed that the toll booth receipt showed that they went through the toll booth on their way home at 6:29 p.m. Based on the time line constructed by the receipts, Olmos stated that they were likely in the health club between approximately 5:47 p.m. and 6:10 p.m.

5

The government's expert witness, Special Agent Jeff Laverman with the Bureau of Alcohol, Tobacco, Firearms and Explosives, testified that the fire originated in the men's whirlpool and sauna area and in the adjacent hallway. Laverman stated that gasoline was the accelerant used to start the fire and that remnants of a five gallon gasoline can were found in the wreckage of the building. The investigation found that the back door of the health club, which could only be locked and unlocked from the inside, was unlocked at the time of the fire. Laverman testified that defendant told him that he had placed bug bombs in the building the evening before the fire. Laverman stated that remnants of bug bombs were found in the wreckage. Laverman stated he was able to ascertain that the bug bombs did not cause the fire because they were not found near the area of origin. Finally, Laverman stated that, for someone who knew the building well enough, it would take only a few minutes to spread the gasoline and ignite it.

The government read to the jury excerpts from defendant's testimony during an examination under oath conducted by his insurance company's attorney on June 7, 2006. Defendant admitted that he and Olmos were in the health club the evening of the fire. Defendant testified that he was there to set bug bombs for the second week in a row. Defendant testified that he placed bug bombs in at least four areas of the building. Defendant stated that he did not set the alarm when he left because he thought the bug bombs might set it off. He also stated that he did not go into the back of the health club or through the back door. Defendant further testified that his wife watched him set the bug bombs and that they were in the health club approximately thirty to forty minutes. Defendant testified that he removed certain paintings from the health club after the artist, who had been a personal friend, passed away. Defendant also stated that he removed his Boy Scout medals from the health club approximately five months before the fire and that he removed some free

6

weights and the floor mats a couple of months before the fire. Finally, defendant testified that he had been a full-time firefighter for approximately fifteen years, during which he spent six years actually fighting fires and nine years as a driver.

At the close of the government's case-in-chief, defendant moved for a judgment of acquittal under Fed. R. Civ. P. 29, but did not identify any specific element of the crimes charged that he alleged the government had failed to prove. Dkt. # 127 at 2. The Court denied defendant's motion. Defendant called six witnesses in his defense. These witnesses testified regarding the physical condition of the health club and an incident involving a disgruntled former member of the club. A local resident testified that she saw a suspicious car in the vicinity of the health club during the early morning hours that the fire was burning. Defendant renewed his motion under Rule 29 at the close of his case, and the Court denied the renewed motion. Id. at 3.

The Court instructed the jury on counts one through seven. The Court also instructed the jury that:

> ARGUMENTS AND STATEMENTS BY LAWYERS ARE NOT EVIDENCE. THE LAWYERS ARE NOT WITNESSES. WHAT THEY HAVE SAID IN THEIR OPENING STATEMENTS, WILL SAY IN THEIR CLOSING ARGUMENTS, AND AT OTHER TIMES IS INTENDED TO HELP YOU INTERPRET THE EVIDENCE, BUT IT IS NOT EVIDENCE. IF THE FACTS AS YOU REMEMBER THEM DIFFER FROM THE WAY THE LAWYERS HAVE STATED THEM, YOUR MEMORY OF THEM CONTROLS.

Dkt. # 124 at 9. The instructions also stated that:

> IF ANY REFERENCE BY THE COURT OR BY COUNSEL TO MATTERS OF TESTIMONY OR EXHIBITS DOES NOT COINCIDE WITH YOUR OWN RECOLLECTION OF THE EVIDENCE, IT IS YOUR RECOLLECTION WHICH SHOULD CONTROL DURING YOUR DELIBERATIONS AND NOT THE STATEMENT OF THE COURT OR OF COUNSEL.
>
> YOU ARE THE SOLE JUDGES OF THE EVIDENCE RECEIVED IN THIS CASE.

Id. at 51.

The jury convicted defendant on all seven counts tried.

## II.

Defendant has renewed his motion for judgment of acquittal pursuant to Rule 29 and has also filed a motion for a new trial pursuant to Rule 33. As noted above, the grounds upon which defendant argues he is entitled to a judgment of acquittal or a new trial are identical. Defendant makes the following five arguments in support of his motions:

First, defendant argues that "the government engaged in improper closing argument which, though not objected to, constituted fundamental error." Dkt. # 129 at 2. Specifically, defendant states that the government's closing argument "consisted of histrionics/crying . . . and making Biblical-type references to 'Judgment Day.'" Id.

Second, defendant argues that the government's case-in-chief and closing argument improperly focused on the character of defendant and how he mistreated his employees. Defendant likens the admission of this evidence to the admission of prior bad acts evidence under Rule 404(b), which defendant argues was improper because the government did not give notice of its intent to offer evidence pursuant to Rule 404(b).

Third, defendant argues that, during its closing argument, the government "misrepresented and mischaracterized the time-frame involved in the setting of the fire . . . ." Dkt. # 129 at 2. In its closing argument, the government stated that defendant had the opportunity to pour the gasoline and set the fire when he went to the health club sometime between 5:30 p.m. and 6:30 p.m. Defendant argues that this is "factually incorrect" because the evidence shows that defendant could not have been in the health club during that entire period of time.

8

Fourth, defendant objects to the introduction of evidence regarding defendant's personal bankruptcy because the prejudicial effect outweighed any probative value.

Fifth, defendant contends that Laverman testified outside the scope of his report by stating "where within the gym [he] would have set the fire had he set a fire at this particular location." Dkt. # 129 at 3.

### A. Motion for Judgment of Acquittal

Under Fed.R.Crim.P. 29(c)(1), a defendant "may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict . . . ." The Court must determine whether there is sufficient evidence from which a jury could have found defendant guilty beyond a reasonable doubt. United States v. Bailey, 327 F.3d 1131, 1140 (10th Cir. 2003). When ruling on a Rule 29(c) motion, the Court must "view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government," and the jury's verdict should be set aside "only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Haslip, 160 F.3d 649, 652-53 (10th Cir. 1998). The Court "may neither weigh conflicting evidence nor consider the credibility of witnesses." United States v. Pappert, 112 F.3d 1073, 1077 (10th Cir.1997).

The five grounds upon which defendant bases his motion for judgment of acquittal can be categorized either as allegations of improper admission of evidence (second, fourth, and fifth grounds) or allegations of prosecutorial misconduct (first and third grounds). However, neither improper admission of evidence nor prosecutorial misconduct are proper bases for a motion for a judgment of acquittal under Rule 29. See United States v. Arnulfo-Sanchez, 71 F. App'x 35, 40

9

(10th Cir. 2003) (unpublished)[4] ("Prosecutorial misconduct is not grounds for action under Rule 29."); United States v. Urena, 27 F.3d 1487, 1490 (10th Cir. 1994) ("argument that district court improperly admitted certain testimony . . . is not a proper basis for a Rule 29[ ] motion."). "The proper basis for a Rule 29[ ] motion for judgment of acquittal is a claim of insufficient evidence in light of the elements of the offense charged." Urena, 27 F.3d at 1490.

The only argument that defendant makes regarding the insufficiency of evidence is his statement that "[t]here was insufficient time for the defendant to have set the fire, even according to the government's witnesses." Dkt. # 129 at 3. The government presented evidence that, on the night of the fire, defendant and Olmos went through a toll booth at 5:32 p.m. Olmos stated that it was approximately a fifteen minute drive to the health club. Upon arriving, defendant unlocked the door and turned off the alarm. When they left the health club, defendant and Olmos went to the gas station. The gas station receipt showed that the transaction took place at 6:14 p.m. Based on this, Olmos testified that they were likely in the health club between 5:47 p.m. and 6:10 p.m. The government's expert stated that the fire started in the men's whirlpool and sauna area and adjacent hallway. The expert further stated that, for someone who knew the building, it would not take long to spread gasoline in this area. The government presented sufficient evidence from which the jury could have concluded that defendant had time to spread the gasoline while he was inside the health club on January 22, 2006. Viewing the evidence in the light most favorable to the government, the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn

---

[4] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

therefrom, was sufficient for a reasonable jury to find defendant guilty beyond a reasonable doubt. There is no basis for judgment of acquittal.

**B.      Motion for New Trial**

"Upon defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "In other words, if after weighing the evidence and the credibility of the witnesses, the court determines that the verdict is contrary to the weight of the evidence such that a miscarriage of justice may have occurred, it may grant the defendant's motion." United States v. Gabaldon, 91 F.3d 91, 93-94 (10th Cir. 1996) (internal quotations omitted). Motions for a new trial "call for an examination of the prejudicial impact of an error or errors when viewed in the context of an entire case." Id. at 94. "A motion for a new trial is not regarded with favor and is only issued with great caution." United States v. Herrera, 481 F.3d 1266, 1269-70 (10th Cir. 2007). The decision whether to grant a motion for a new trial is committed to the sound discretion of the trial court. Id. at 1270.

The Court first addresses defendant's two allegations of prosecutorial misconduct. When a motion for new trial is based on allegations of prosecutorial misconduct, a two-part test is applied to determine the merits of the claim. United States v. Cortez, 252 F. App'x 887, 892 (10th Cir. 2007) (unpublished). First, a court decides "whether the conduct was improper." United States v. Apperson, 441 F.3d 1162, 1207 (10th Cir. 2006). Second, a court decides "whether the conduct, if improper, warrants reversal." Id. "The general fovhhvcus of the second part of the test focuses on whether the prosecutor's conduct affected the fairness of the trial." Id. (internal quotations omitted).

In a three-sentence argument, defendant alleges that the prosecutor "engaged in improper closing argument" consisting of "histrionics/crying in the second half of the closing argument and

11

making Biblical-type references to "Judgment Day[,]" which "destroyed the essential fairness of the trial." Dkt. # 129 at 2. Defendant has not provided any explanation as to how the allegedly improper comments affected the fairness of the trial, nor has defendant provided any legal authority in support of his position. During the latter part of its closing argument, the government stated that defendant's "day of reckoning" was approaching. This phrase was repeated approximately four times and was in reference to the evidence that defendant's mortgage payments were coming due and that he did not have the financial resources to meet those obligations. The Tenth Circuit has held that "it is improper to use closing argument to inflame the passions and prejudices of the jury." United States v. Jones, 468 F.3d 704, 708 (10th Cir. 2006). However, that is balanced "by the acknowledgment that in an emotionally charged trial, the prosecutor's closing argument need not be confined to such detached exposition as would be appropriate in a lecture." Id. (internal quotations omitted). The government's use of the phrase "day of reckoning" was used here to impart to the jury that defendant was in a desperate situation. It was not used in such a way that it inflamed the passions of the jury against defendant. The language used by the government here is less problematic than language that the Tenth Circuit has previously deemed permissible. See id. (holding that government's references to drugs as "poison" and to defendant as "a shark" were not improper); Malicoat v. Mullin, 426 F.3d 1241, 1256 (10th Cir. 2005) (holding that government's reference to defendant as "a monster" was not improper). Finally, even if these statements were improper, they were not so severe that they undermined the fundamental fairness of the trial.[5]

---

[5] As to defendant's allegation that counsel for the government was "crying" during its closing argument, the Court observed no such behavior, and also notes that defense counsel could not see the prosecutor's face during this argument.

Defendant's second allegation of prosecutorial misconduct is that the government "misrepresented and mischaracterized the time-frame involved in the setting of the fire" by stating that "defendant had between 5:30 p.m. and 6:30 p.m. to set the fire - which is factually incorrect." Dkt. # 130 at 2. During its closing argument, the government stated that defendant <u>went</u> to the health club sometime between 5:30 p.m. and 6:30 p.m. The evidence supports this inference, as it shows defendant paying a toll on the way to the health club at 5:32 p.m. and paying for gas after being at the health club at 6:14 p.m. The government did not argue that defendant was present at the health club during the entire hour between 5:30 p.m. and 6:30 p.m. Thus, there were no misrepresentations or mischaracterizations in the government's closing argument. Even if the government's statement were found to be improper, it did not affect the fundamental fairness of the trial, as the jury was repeatedly instructed that counsel's closing arguments were not evidence and that the jury's recollection of the evidence should control. Dkt. # 124 at 9, 51.

Defendant's remaining three grounds for a new trial relate to admission of certain testimony. Where a motion for a new trial is based on admission of evidence that was not objected to at trial, a court reviews the admission of the testimony only for plain error affecting substantial rights. <u>United States v. Schene</u>, 543 F.3d 627, 640 (10th Cir. 2008).

Defendant argues that the testimony of Sparks and Radmilovich concerning their personal opinions of defendant and his prior mistreatment of them was character evidence improperly admitted under Fed. R. Evid. 404(b). Defendant did not object to the admission of this evidence at trial, nor has he provided any legal authority supporting his position. The Court finds that the testimony of Sparks and Radmilovich was not admitted to prove defendant's character in order to show his actions in conformance therewith, which would be impermissible under Rule 404. Instead,

13

this evidence was admitted to show the nature of the relationship between the witnesses and defendant and to establish whether the witnesses had any potential bias. Such testimony is relevant to assist the jury in evaluating the credibility of the testimony. See United States v. Sanchez-Garcia, 150 F. App'x 909, 920 (10th Cir. 2005) (unpublished) (holding that district court did not abuse discretion in admitting testimony that was "relevant to establish the relationship of the parties and to give a complete background of [the events]"); Koch v. Koch Industries, Inc., No. 85-1636-C, 1992 WL 223816, at *15 (D. Kan. Aug. 24, 1992) ("It is a truism that evidence of bias is critical in evaluating the credibility of a witness.").

Defendant next argues, in one sentence, that the admission of evidence regarding defendant's personal bankruptcy was improper because the "prejudicial effect outweighed any probative value." Dkt. # 130 at 3. Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. When considering a Rule 403 challenge, a court should "give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." Mendelsohn v. Sprint/United Management Co., 466 F.3d 1223, 1231 (10th Cir. 2006). Exclusion of evidence under Rule 403 is an extraordinary remedy that should be used sparingly. World Wide Ass'n of Specialty Programs v. Pure, Inc., 450 F.3d 1132, 1139 (10th Cir. 2006). Defendant did not object to the admission of the bankruptcy evidence at trial, nor has he provided any legal authority in support of his position. Prior to trial, defendant filed a motion in limine seeking to exclude evidence of defendant's plea of guilty to counts 8 and 10 (Dkt. # 66). At the pre-trial conference, the Court discussed this issue with the parties and held that evidence of the

bankruptcy was relevant to the issues at trial. Dkt. # 70. The Court continues to believe that the fact that defendant filed for bankruptcy eight months before the fire was relevant to show that he was in financial distress and had motive to set the fire in order to collect the insurance proceeds. On the other hand, the fact that an individual has filed for bankruptcy has minimal, if any, prejudicial value. It is unlikely that a jury would presume that a person's financial state, in and of itself, reflects badly on a person's character or makes it more likely that he is capable of committing a crime. Given the relevance of the bankruptcy and its minimal prejudicial effect, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

Finally, defendant makes a one-sentence argument that the government's expert improperly testified regarding "where within the gym the expert would have set the fire had he set a fire at this particular location." Dkt. # 130 at 3. Defendant did not object to this testimony at trial and has provided no legal authority in support of his position. The government asked Laverman "how" he would have set the fire if he wanted to burn down the building. Laverman responded that he would have done it the way it appears to have been done. Pursuant to Rule 702, an expert may testify in the form of an opinion if the requirements of Rule 702 are met. Defendant does not argue that the requirements of Rule 702 were not met. Instead, defendant argues that the testimony regarding how Laverman would have set the fire was "outside the scope" of his expert report. Fed. R. Crim. P. 16(a)(1)(G) requires that, at the defendant's request, the government "must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(G). The Tenth Circuit has held that such a written summary "falls far short of the 'complete statement' required of litigants in civil cases." United States v. Nacchio, 555 F.3d 1234, 1262 (10th Cir. 2009).

15

"In particular, Rule 16 does not require experts in criminal cases to provide written reports explaining their opinions or to make a written proffer containing the information required under the civil rules." Id. Defendant has cited no legal authority for the proposition that Laverman was permitted to testify only as to matters explicitly referred to in his report. Laverman's opinion regarding where he would have set the fire is certainly encompassed by a report summarizing his opinion regarding the origin of the fire.

Defendant has not identified any error that would warrant a new trial.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Judgment of Acquittal Pursuant to Federal Rules of Criminal Procedure 29 (Dkt. # 129) and Defendant's Motion for New Trial Pursuant to Federal Rules of Criminal Procedure 33 (Dkt. # 130) are **denied**.

**DATED** this 27th day of June, 2012.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE